UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| LAURI MCHUGH, | Case No.: 2:05-cv-00976-RLH-PAL |
| Plaintiff, | **O R D E R** |
| vs. | (Motion for Summary Judgment–#47) |
| PAPILLON AIRWAYS, INC., a Nevada corporation, | |
| Defendant. | |

Before the Court is Defendant Papillon Airways, Inc.'s **Motion for Summary Judgment** (#47), filed September 28, 2007. The Court has also considered Plaintiff Lauri McHugh's Opposition (#51, Errata #52), filed October 22, 2007, and Plaintiff's Reply (#53), filed November 5, 2007.

**BACKGROUND**

This case is a wrongful termination case based on the alleged gender discrimination of Plaintiff by Defendant Papillon Airways. In November 2002, Plaintiff began working at Papillon as a driver taking passengers to and from helicopter rides in Las Vegas, Nevada. On May 25, 2004, Plaintiff's supervisor, Wendy Greer, received a complaint about Plaintiff making an

1

illegal left turn with passengers in the van.  Plaintiff was thereafter radioed back to the office where Greer excused Plaintiff from her shift and allegedly told Plaintiff to discuss the matter with her before driving on her next shift.  Plaintiff was not scheduled to work the following three or four days, but called Papillon the following day and spoke with her direct supervisor, Luis Asato, and discussed the incident with him.  She called again the following day, and claims that Asato told Plaintiff not to worry about the incident and that he would call her as soon as he spoke with Greer.  On May 29, 2004, at the alleged instruction of Greer, Asato terminated Plaintiff over the phone.

Defendant maintains that Plaintiff was terminated for insubordination and failing to show up to work to discuss the driving incident as instructed.  However, Plaintiff contends that her termination was the result of unlawful gender discrimination.  Plaintiff further claims that Defendant consistently treated female employees different than the male employees in that male drivers were not terminated or even reprimanded for their on-the-job misconduct.  Plaintiff also contends that the company uniforms were discriminatorily different and that she was subjected to a hostile work environment.

After receiving the required right to sue letter, Plaintiff filed the instant action.  The only claims that remain following an earlier motion to dismiss are wrongful termination, hostile work environment, and sex discrimination.  Defendant moves for summary judgment on all claims.  For the following reasons, the Court denies Defendant's Motion for Summary Judgment.

Additional facts bearing on the Court's decision are outlined below.

**DISCUSSION**

**I. Summary Judgment Standard**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  An issue is "genuine" only if there is a sufficient evidentiary basis

AO 72
(Rev. 8/82)

on which a reasonable fact finder could find for the nonmoving party, and a dispute is "material" only if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view all facts and draw all inferences in the light most favorable to the non-moving party. *Blanck v. Hager*, 360 F. Supp. 2d 1137, 1148 (D. Nev. 2005) (citations omitted).

In response to a properly submitted summary judgment motion, the burden shifts to the opposing party to set forth specific facts showing that there is a genuine issue for trial. *Henderson v. City of Simi Valley*, 305 F.3d 1052, 1055–56 (9th Cir. 2002). The non-moving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan v. NME Hosp., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991).

**II. Tortious Discharge**

In ruling on a prior motion to dismiss, this Court held that Plaintiff's third cause of action sufficiently asserted a common law claim for tortious discharge in violation of Nevada public policy, rejecting Defendant's argument that Plaintiff had adequate statutory remedies for her damages. (Order, Dkt. #22.) Defendant again raises the issue, this time relying on *Canada v. Boyd Group, Inc.*, 809 F. Supp. 771 (D. Nev. 1992). The *Boyd Group* court held that the plaintiff did not have a tort cause of action for wrongful termination in violation of Nevada public policy because the employee had adequate statutory remedies under Nev. Rev. Stat. § 613.330.

Plaintiff fails to oppose Defendant's argument and has therefore failed to meet her burden in proving that her statutory remedies are inadequate. Thus, the Court dismisses Plaintiff's wrongful termination claim insofar as it is based on common law principles.

**III. Gender Discrimination and Wrongful Termination–-Title VII and Nevada Statutes**

Plaintiff alleges gender discrimination and wrongful termination under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2, and its Nevada counterpart at Nev. Rev. Stat. § 613.330

et seq. "Title VII affords employees the right to work in an environment free from discriminatory intimidation, ridicule and insult." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986). Plaintiff's Title VII and state statutory claims can be analyzed using the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Apeceche v. White Pine County*, 615 P.2d 975, 977 (Nev. 1980) (stating that Nevada's Equal Employment Opportunity statute is nearly identical to Title VII). Under *McDonnell Douglas*, a plaintiff raises a presumption of unlawful discrimination if he can show that: (1) he belongs to a protected class, (2) he was performing according to his employer's legitimate expectation, (3) he suffered an adverse employment action, and (4) other employees with qualifications similar to his own were treated more favorably. *Vasquez v. County of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2003).

If a plaintiff makes a prima facie showing, the burden then shifts to the employer to provide a legitimate, non-discriminatory reason for the employment action. *Id.* (citations omitted). If the employer provides such a reason, the burden then shifts back to the plaintiff to show that the employer's reason for the termination is a pretext for discrimination. *Id.* Notwithstanding the burden-shifting approach, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993).

**A. Plaintiff's Prima Facie Showing**

Defendant argues that Plaintiff cannot prove, as part of her prima facie case, that other similarly-situated employees were treated more favorably or that she was performing according to Papillon's legitimate expectations. *Vasquez*, 349 F.3d at 640. The Court finds that Plaintiff has made a prima facie showing of discrimination. *Cordova v. State Farm Ins. Cos.*, 124 F.3d 1145, 1148 (9th Cir. 1997) (describing the minimal showing required to satisfy a prima facie case of discrimination).

//

//

4

**1. Similarly Situated**

To show that employees are similarly situated, the individual seeking relief must demonstrate that her or she is similarly situated in all material aspects to those employees receiving more favorable treatment. *Morgan v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006). Here, the material aspect centers around whether Plaintiff, by failing to show up at the alleged meeting to discuss the driving incident, was similarly situated to male employees who engaged in misconduct of a different kind than Plaintiff. Plaintiff submits several examples of male drivers engaging in prohibited conduct for which they were not terminated, or in some cases, not even reprimanded. For example, one male driver damaged a company vehicle by putting gasoline in the diesel engine. The incident became a joke when a another male driver drew and posted a cartoon about it. Another male driver went undisciplined when he damaged a company van by backing into a post. Another damaged a company van in a sideswiping traffic accident without reprimand, while yet another driver allegedly karate chopped a sliding door at the Las Vegas Executive Air Terminal and only had to pay for the damage. Other male drivers have allegedly punched co-workers, used obscenities toward supervisors, co-workers and customers, and committed other traffic safety violations without consequence.

Though the male employees' conduct presented here does not involve the same circumstances that allegedly cause Plaintiff's termination, the Court finds that a reasonable jury could find Plaintiff similarly situated to the male employees. *Lunini v. Grayeb*, 395 F.3d 761, 770 n.6 (7th Cir. 2005) ("[w]hether individuals are similarly situated is a factual question for the jury."). The Court does not adopt Defendant's narrow argument that Plaintiff should only be compared to other employees who did not show up for a meeting to discuss a driving incident. Rather, the evidence could lead a reasonable jury to find that Plaintiff was terminated for conduct that was arguably less severe than that engaged in by her male co-workers. Given the minimal showing a plaintiff must make to demonstrate a prima facie case of discrimination, the Court finds that Plaintiff has met her burden on this element of her claim. *Cordova*, 124 F.3d at 1148.

### 2. Legitimate Expectations

The Court also finds that Plaintiff makes a prima facie showing that she was performing according to Papillon's legitimate expectations. Prior to the termination, the evidence indicates that Plaintiff had never been given any verbal or written warnings of any kind, and Defendant concedes that Plaintiff was a competent employee during most of her tenure prior to her termination.

Having found that Plaintiff made a prima facie showing of gender discrimination, the burden shifts back to Defendant to present a legitimate, non-discriminatory reason for dismissal. *Vasquez*, 349 F.3d at 640. As discussed, Defendant states that it terminated Plaintiff for failing to come to work to discuss the driving incident. The Court now turns to whether Plaintiff raises a genuine issue of fact to show that Defendant's proferred explanation was merely a pretext for discrimination. *Id.*

### B. Pretext

A plaintiff can meet his burden of showing pretext either directly, by showing that discrimination more likely motivated the employer, or indirectly, by showing that the employer's proffered explanation for the adverse employment action is unworthy of credence. *McDonnell Douglas*, 411 U.S. at 804–05; *Vasquez*, 349 F.3d at 641. Here, the Court finds that Plaintiff has sufficiently called into question Defendant's proferred reason for termination such that a reasonable jury could find gender discrimination to be Papillon's true motivation. "[P]roving the employer's reason false becomes part of (and often considerably assists) the greater enterprise of proving that the real reason was intentional discrimination." *St. Mary's Honor Ctr.*, 509 U.S. at 517 (interpreting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)). Defendant contends that Plaintiff was fired for not coming into work the following day—the first of at least three scheduled days off—to discuss the incident, while Plaintiff maintains that she was instructed only that she needed to discuss the incident sometime before her next shift. Rather than going to the office, Plaintiff called Papillon the following day and spoke with her direct supervisor and lead

AO 72
(Rev. 8/82)

driver, Asato. Plaintiff contends that she did not speak with Greer because Asato was in her direct chain of command and because Greer was not in the office when she called. Plaintiff also called Asato the following two days and Asato allegedly told Plaintiff not to worry and that he would talk to Greer about the incident. The evidence further suggests that Greer must have known that Plaintiff was calling because she allegedly instructed Asato to fire Plaintiff over the telephone.

Further, there appears to be disagreement between Greer, Asato and another supervisor, Thao Do, regarding who actually terminated Plaintiff. Do believed that Greer and Asato made the decision, but Greer testified that Asato made the decision, and Asato denied having the authority to make the decision. Plaintiff also points out that it is suspicious that the three written statements by Greer, Do, and Asato, were all typed by Greer. The statements are undated, and Do testified that he is unsure whether he would have prepared a statement absent Greer's request. Moreover, while Defendant maintains that Plaintiff was terminated for not discussing the incident, Asato allegedly told Plaintiff that she was fired for "something about driving."

Viewing the evidence in light most favorable to the non-moving party, the Court finds that Plaintiff has raised a triable issue as to whether Defendant's proferred reason for her termination was a pretext for discrimination.

**IV. Hostile Work Environment**

As a preliminary matter, Defendant raises the issue of whether Plaintiff's hostile work environment claim was properly raised in her administrative charge. The Court rejected this very argument on an earlier motion to dismiss and need not address it here again. And contrary to Defendant's urging, the Court will not limit Plaintiff's evidence to those events occurring on May 25, 2004, the date of the driving incident.

To establish a Title VII violation of hostile work environment, a plaintiff must establish that (1) the employee was subjected to verbal or physical conduct of a sexual nature; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the

conditions of employment and create an abusive work environment. *Craig v. M & O Agencies, Inc.*, 496 F.3d 1047, 1054–55 (9th Cir. 2007). Title VII, however, was not designed to become a "general civility code." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). Here, Defendant disputes that Plaintiff can satisfy either the first or third elements.

**A. Gender-Based Harassment**

Harassing conduct need not be motivated by sexual desire to support a hostile work environment claim on the basis of sex. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998). For example, "[a] trier of fact might reasonably find such discrimination . . . if a female victim is harassed in such sex-specific and derogatory terms by another woman to make it clear that the harasser is motivated by general hostility to the presence of woman in the workplace." *Id.* Plaintiff argues that the female employees were subjected to stereotypical disparities of the kind Title VII aims to avoid. For example, the uniform policy differed for male and female employees. Female drivers wore black polyester uniform pants, scarves, and dress shoes, while male drivers could wear shorts and tennis shoes and had an option of wearing a tie. Further, Papillon laundered the male drivers' uniforms, while female drivers cleaned their own.

Plaintiff also claims that she was denied training opportunities due to her gender. She testified that after being replaced on "hotloading" (loading customers onto helicopters while the blades are running) by an untrained, inexperienced male, she was repeatedly denied the necessary new training for hotloading. She testified that after a fellow employee advised her about the new training, her supervisors denied knowing anything about it, thereby denying her the opportunity.

And last, Plaintiff asserts that male employees received less discipline or none at all for engaging in misconduct while Plaintiff was terminated for not coming into work on her scheduled off day to discuss the driving infraction. The Court finds that Plaintiff has submitted sufficient evidence on which a reasonable jury could find that any disparate treatment between

Plaintiff and her male co-workers was "motivated by general hostility to the presence of woman in the workplace." *Id.*

### B. Severe or Pervasive Conduct

To show that the work environment was sufficiently severe or pervasive to alter the conditions of employment, a plaintiff's workplace must "subjectively and objectively be perceived as abusive." *Fuller v. City of Oakland*, 47 F.3d 1522, 1527 (9th Cir. 1995) (citation omitted).

#### 1. Objectively Hostile Environment

In analyzing whether the alleged conduct created an objectively hostile work environment, courts consider the totality of the circumstances, including the frequency, severity, humility, and level of interference with work performance. *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 23 (1993). The Court analyzes each factor in turn. Regarding the frequency of the alleged discrimination, Plaintiff argues that she was forced to wear the same uncomfortable and physically limiting uniform everyday. Concerning its severity, Plaintiff alleges that female drivers risked losing their jobs for infractions while male drivers went unpunished. Plaintiff next argues that the humiliation of the discrimination perpetuates the stereotype that female drivers were sent home each night to their washing machines due to the fact that Papillon only laundered the male employees' uniforms. And last, Plaintiff argues that the discrimination interfered with her job in that she was denied appropriate training. The Court finds that a reasonable jury, upon review of the foregoing evidence, could find Plaintiff's workplace objectively hostile.

#### 2. Subjectively Hostile Environment

To determine whether the workplace was subjectively hostile, a court will consider whether a reasonable female in the plaintiff's position would have considered the conduct sufficiently severe or pervasive as to alter the conditions of employment and create an abusive working environment. *Ellison v. Brady*, 924 F.2d 872, 879 (9th Cir. 1991). Plaintiff complained of both the uniform policy and her alleged denial of hotloading training. She thought of her workplace environment as a "boys club." The Court finds this evidence sufficient to raise a

genuine issue of material fact as to whether Plaintiff reasonably believed her workplace to be hostile.

For the foregoing reasons, the Court finds that Plaintiff has raised genuine issues of material fact on her hostile work environment claim to preclude summary judgment.

**V. Affirmative Defenses**

Defendant next argues that even if Plaintiff raises triable issues on the above claims, it is nevertheless entitled to summary judgment on the affirmative defenses that Plaintiff failed to mitigate her damages, and on the *Ellerth/Faragher* defense that Defendant took reasonable steps to prevent and correct any harassment and Plaintiff failed to avail herself of the corrective opportunities presented by Papillon.

**A. Duty to Mitigate**

A plaintiff has a duty to mitigate lost wages by taking reasonable steps to locate comparable substantive employment. *Ford Motor Co. v. EEOC*, 458 U.S. 219, 231 (1982) (citing Title VII's statutory duty to mitigate, 42 U.S.C. § 2000e-5(g)). To prevail on a failure to mitigate argument at the summary judgment stage, a defendant must prove that during the time in question, there were substantially equivalent jobs available and that plaintiff failed to use reasonable diligence in pursuing them. *EEOC v. Farmers Bros. Co.*, 31 F.3d 891, 906 (9th Cir. 1994).

To show that comparable jobs were available to Plaintiff from 2004 to the present, Defendant submits data from the Nevada Department of Employment, Training and Rehabilitation report showing that 764 driving jobs are expected each year from 2004 to 2014 with an average growth rate of 6.3% annually. Further, employment rates for May 2004 through May 2006 were 4.3%, 3.9% and 3.8% respectively, which, according to Defendant, demonstrates that those who were looking for work in Las Vegas were being successful in finding employment. Plaintiff counters that Defendant's expert was not disclosed pursuant to Fed. R. Civ. P. 26(a)(1). The record does not reflect how late the disclosure was made or how Plaintiff was prejudiced by it and thus the Court considers the evidence for purposes of this Motion.

10

Next, Defendant argues that Plaintiff has not shown reasonable diligence in pursuing replacement income. Since her termination, Plaintiff has pursued a variety of jobs. First, she worked as a driver for another helicopter company for one day when she left to take a better-paying job as a painter. She testified that the painting company she worked for did not have enough work for her and so she voluntarily quit after one or two weeks and that it took her weeks to get her final paycheck. Next, she worked for two companies, Momentum and Trade Show Services, details of which are not provided, and earned a few hundred dollars with each. Thereafter, Plaintiff unsuccessfully attempted to start two business: McHugh Helicopter Management Services and Affordable Laser. After trying and failing in those ventures, Plaintiff has been self-employed working on a patent application for an invention relating to guitars. Plaintiff has not earned any income from this undertaking but has indicated that at least one company is an interested potential investor.

The Court finds that a genuine issue of material fact remains on the issue of whether Plaintiff properly mitigated her damages. "Self-employment does not necessarily indicate a lack of reasonable diligence." *Kloss v. Honewell, Inc.*, 890 P.2d 480, 485 (Wash. App. 1995). Plaintiff argues that the discrimination and humiliation suffered at Papillon, and the frustration of not getting promptly paid for her painting services, contributed to her desire to be self-employed even if the venture is risky. A reasonable jury could find that Plaintiff properly mitigated her damages. Accordingly, summary judgment is denied on this defense.

**B.   *Ellerth/Faragher* Defense**

In the landmark *Ellerth* and *Faragher* decisions, the United States Supreme Court held that an employer can escape liability for certain Title VII claims by proving "(a) the employer exercised reasonable care to prevent and promptly correct harassment and discrimination in the workplace, and (b) the employee unreasonably failed to take advantage of the preventative or corrective opportunities provided by the employer." *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998); *see also Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998). However, this

defense is only available when "no tangible employment action is taken." *Id.* Here, Defendant's termination of Plaintiff certainly qualifies as a tangible employment action, making Defendant's reliance on this defense misplaced.

## CONCLUSION

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment (#47) is DENIED.

Dated: January 15, 2008.

_____
**ROGER L. HUNT**
**Chief United States District Judge**